RICK KLINGBEIL, PC
1826 NE Broadway
Portland, OR 97232
Ph: 503-490-6763
rick@klingbeil-law.com

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **JASON LEWIS SIMON**, an individual, | Case No. 3:23-cv-00487-SI |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| **RITE AID CORPORATION**, a Delaware Corporation, | |
| Defendant. | |

Plaintiff responds to Defendant's FRCP 12(b)(6) *Motion to Dismiss Plaintiff's First Amended Complaint* as follows:

## I.     Introduction

### A.     Relevant facts

Defendant Rite Aid and Plaintiff's counsel have been down this road before. In *Silva, et al. v. Rite Aid,* 416 F. Supp. 3d 394 (M.D. Pa. 2019), Ms. Silva filed a class action related to dietary supplements sold at Rite Aid stores under the Rite Aid branding. The case was originally

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

filed in Oregon, but later voluntarily removed to Pennsylvania for reasons not relevant here. The labeling on each of the Accused Products, Silva alleged, were misleading because the front facing part of the product labels, denoted by the FDA and Oregon law as the "Principal Display Panel," ("PDP") were misleading.

The labels stated, using a Rite Aid Vitamin C bottle as an example, that the package contained 50 capsules ("Units") with 1000 mg ("Supplement Quantity") of Vitamin C. For this, and each of the Accused Products in the *Silva* case, the PDP was misleading because the representation of Supplement Quantity (i.e., 1000 mg) was based on two or more individual Units.[1] A reasonable consumer would read the PDP and conclude the container had 50 capsules that each contained 1000 mg, when it actually contained 50 capsules with 500 mg each. The consumer received half (or less than half for "serving sizes" of 3 or more) of the Supplement Quantity they intended to purchase. Each of these labels violated both the Oregon and federal laws that require the PDPs to provide "an accurate statement of the net quantity of the contents."

The *Silva* case was resolved through settlement. *Silva* is relevant because it shows Rite Aid was fully aware of Silva's allegations and the issues related to labels on the accused dietary supplements there at issue. In recognition of the problem, Rite Aid later changed most of the labels on its Rite Aid branded dietary supplements to comply with the applicable statutes and rules cited in the *Silva* complaint.

Unfortunately, Rite Aid failed to make the changes on several of its products. It also continued to screen, review, choose, and then sell dietary supplements from third-party suppliers

---

[1] The claims in *Walters v. Vitamin Shoppe, Inc.,* 701 F.App'x 667 (9th Cir. 2017) discussed below, were also based on the exact same type of misleading statements on the products' PDPs there at issue.

Page 2 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

that misled consumers in *exactly* that same way as the products in Silva. It did this even after subjecting the third-party Accused Products to its rigorous review process – a process that requires an in-depth review by Rite Aid to check the product's packaging and labeling. Even though Rite Aid reviewed each Accused Product, it still embraced each by posting price labels on shelves nearby that parroted the misleading information, and it duplicated and expounded on the misleading information on its website pages. See, e.g., Figure 8 at page 29; Figure 8(b) at page 30; Figure 12 at page 37; and paragraphs 92-94 of the *First Amended Complaint*.

The present lawsuit addresses Rite Aid's acts of continuing to market, offer for sale, and selling dietary supplements under both Rite Aid and third-party branding that mislead consumers in exactly the same way alleged in *Silva* and *Walters v. Vitamin Shoppe*, 701 F.App'x 667 (9th Cir. 2017).

## II.     Argument

### A.     (Addressing Defendant's Brief, Section A.2., pages 9-15.)

**Defendant claims that it is allowed to mislead consumers on the front-facing PDPs of Accused Products as long as it "corrects" the falsehood on the Supplement Facts label on the back of the package. That was the exact argument made by the similarly situated defendant in *Walters v. Vitamin Shoppe* and squarely rejected by the Ninth Circuit Court of Appeals.**

*Walters v. Vitamin Shoppe*, 701 F.App'x 667 (9th Cir. 2017) involved claims that Vitamin Shoppe (a direct Rite Aid competitor) sold dietary supplements with the same type misrepresentations on the PDPs as the Accused Products now at issue in this case and in *Silva*. Vitamin Shoppe claimed it was allowed to mislead consumers through inaccurate information on the PDPs of its products as long as the label on the back side of the container (the Supplement Facts panel) corrected the misrepresentation. The trial court agreed with Vitamin Shoppe and dismissed the case.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

On appeal, the Ninth Circuit Court of Appeals agreed with Walters and reinstated the case, writing:

> [T]he question is whether Walters was required, as a matter of law, to cross-reference statements on a product's label against information found in small print elsewhere on the product. This court has answered that question in the negative. Consumers review the small print on a product's label to learn additional details about a product, <u>not to correct potentially misleading representations found on the front.</u> *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008). Applying the logic of *Williams* to this case, Walters did not have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back. His failure to read the clarifying serving-size information does not constitute a failure to reasonably safeguard his interests. (Emphasis added.)

Rite Aid fails to offer <u>any</u> discussion of contrary authority in its current *Motion*. In particular, it fails to address either *Walters* or *Williams*, both of which are squarely on point on issues central to this case. Instead, it relies on an entirely distinguishable line of cases, and focuses on *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023).

The *McGinity* court's analysis actually *supports* Plaintiff's claims. It stands for the proposition that an *ambiguity* on the front label can be resolved or clarified by reference to the back label, *as long as the front label is not unambiguously deceptive*. When the PDP contains an unambiguously deceptive quantity statement, as here, it cannot be cured by reference to the Supplement Facts label on the back of the container. *Id.*

PDPs for food products, which include dietary supplements, are required by Oregon and federal law to accurately state the quantity of dietary supplement within the container. Plaintiff has alleged that the PDPs violated that rule and misled consumers because the legally required text on the PDPs *unambiguously* overstated the quantity of product by at least double for each Accused Product. (See, *First Amended Complaint*, paras. 43-48; 62-117).

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

In *McGinity*, the claim was that the label at issue violated California consumer protection laws because it contained the words "Nature Fusion" next to an image of an avocado on a green leaf. This, claimed the plaintiff, was misleading because the packaging:

> "represents that the products are natural, when instead they contain nonnatural and synthetic ingredients, harsh and potentially harmful ingredients, and are substantially unnatural." *Id.*

The *McGinity* plaintiff claimed that under Ninth Circuit precedent,[2] a consumer should not be required to reference the Supplement Facts label on the back of the container in order to clarify the information on the front label (PDP). The court disagreed under the particular facts, finding that the term "Nature Fusion" and the image of an avocado on a green leaf *was not unambiguously misleading*, but instead merely *ambiguous*.

As contrast, *McGinity* cited *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) as an example of a misleading front-facing label that could not be cured by reference to the back label. *McGinity* then rejected the analysis now championed by Rite Aid:

> "We explained that the purpose of the ingredients list should be to confirm the representations on the front or other parts of a package. *Id*. at 939-40. We stated:
>
> > 'We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.' *Id.* (emphasis added)."

There was nothing ambiguous about the PDPs on the dietary supplements in Vitamin Shoppe, and there is nothing ambiguous about the PDPs on the Accused Products in this case. The PDPs on both sets of products set forth: (1) the number of Units, (2) the alleged – but

---

[2] Apparently the *McGinity* plaintiff was referencing the *Williams* and *Walters* cases.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

incorrect – quantity of supplement per unit.  The FDA and Oregon rules require that the two numbers must allow the consumer to determine the total quantity of dietary supplement within the container. (*First Amended Complaint*, para. 26-42). They do not do so for any Accused Product, but instead mislead by overstating the quantity by a factor of two or more.  Under *Williams*, *Walters*, and *McGinity*, the Accused Products all are unambiguously misleading to a reasonable consumer.  Defendant's *Motion* should be denied.

> **B.**      **(Addressing Defendant's Brief, Section A.3., pages 15-19.)**
>
> **Defendant Rite Aid is liable for misleading statements on Accused Products from third parties that it chose to stock and sell in its stores. It participated and took an active role in reviewing and approving the labels on the third-parties' Accused Products.  Rite Aid's website pages for each of the Accused Products also restated, reinforced, and amplified the misleading information found on the PDPs through graphics, text, or the associated URL for the page. Plaintiff's *First Amended Complaint* provides sufficient details of the active role taken by Rite Aid.**

Defendant is correct that, in general, an innocent retailer is not liable for mislabeled products provided by third parties when, without more, it simply places the mislabeled product on its shelves and offers it for sale. *Dorfman v. Nutramax Labs., Inc.*, No. 13-0873, 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013).  *Dorfman* was a claim under the California consumer protection statutes but is accord with the prevailing legal analysis regarding the issue. ("*Dorfman* rule").

Under the *Dorfman* rule, liability must be premised on "something more" than passively and innocently placing a third party's mislabeled product onto store shelves and selling it. Plaintiff has alleged "something more" through allegations that Rite Aid took an active role through an approval process that required Rite Aid to review and accept the packages and labels for its third-party suppliers' products before selling them.  Relevant allegations also include that Rite Aid reposted and

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

expanded on the misleading label information by restating the information on its website. Both allegations provide a sufficient basis for Rite Aid's liability when it extensively screened, selected, and then sold the Accused Products. Labels created for Accused Products also show Rite Aid's active participation in communicating the misleading information to customers.

Plaintiff's *First Amended Complaint* at paragraphs 4, 67-71, 92-93, and 116-117 provides relevant allegations:

> 4. The claims concern Rite Aid's countenance, agreement, **approval, reiteration, amplification, and presentation of** deceptive labeling, packaging, containers, marketing, offers to sell, and sales and of certain vitamins, minerals, herbs, amino acids, spices, and other purportedly beneficial dietary substances ("Dietary Supplements") to Oregon consumers at Rite Aid retail stores throughout Oregon.
>
> *****
>
> 67. Rite Aid often displays a price label adjacent to an Accused Product. These may include the price, type of Dietary Supplement, quantity of active or primary ingredient, and the number of Units. ("Price Labels.") (See Figure 8(a)).
>
> 68. **The Price Labels for many of the Accused Products are consistent with, reinforce, and amplify the misleading and deceptive quantity statements contained on the PDPs.[3]**
>
> 69. During the Class Period, Rite Aid maintained a website at www.riteaid.com. On its website, Rite Aid listed, advertised, and promoted each of the Accused Products through text and graphics ("Website Listing"). **The Website Listing for each of the Accused Products restated, reinforced, and amplified the misleading information found on the PDPs through use of graphics, text, and/or the associated URL for the page.** See, Corker v. Costco Wholesale Corp., No. C19-0290RSL (W.D. Wash. Nov. 12, 2019) citing JST Distr., LLC v. CNV.com, Inc., C17-6264PSG, 2018 WL 6113092 (C.D. Cal. Mar. 7, 2018).

---

[3] Defendant misinterprets Plaintiff's references to Price Labels adjacent to the Accused Products, claiming there is no allegation that Plaintiff saw them while in the store. That is entirely beside the point. The reference to Price Labels is offered to show that Rite Aid was more than an innocent, passive retailer per *Dorman*, but instead created and placed the labels that restated and amplified the misleading information found on the PDPs.

Page 7 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

70. Figure 8(b) provides an example page for an Accused Product.

71. **During the Class Period, Rite Aid had in place a product and supplier application, acceptance, review, and compliance process. Through that process, Rite Aid controlled, reviewed, approved, rejected, and/or participated in the creation of the labels and PDPs for the Accused Products.** See, Corker, supra.

\*\*\*\*\*

92. At Oregon Rite Aid stores, a Price Label for the Rite Aid Magnesium product is attached to the shelf adjacent to and below the Package. This Price Label is representative of other misleading Price Labels placed adjacent to many of the other Accused Products. **The misrepresentations and omissions on the Price Label are consistent with, and further reinforce the misleading representations and omissions on the PDP.**

93. Figure 8 above and Figure 12 below shows examples of misleading Price Labels.

\*\*\*\*\*

116. At all times during the Class Period, Rite Aid **knew or should have known, or possessed inquiry notice** that the PDPs on the Accused Products it selected to sell in its Oregon stores violated Oregon and federal law.

117. Rite Aid **knew or should have known** that the PDPs on the Accused Products created a substantial likelihood of misleading consumers regarding the total amount of Dietary Supplement per Unit, and total amount of Dietary Supplement within the Package.  (Bold Added.)

Plaintiff's claims are also appropriate because of the direct liability created by ORS 616.215, and based on Rite Aid's *actual knowledge* that the labels were misleading. ORS 616.215 provides a basis for direct liability not contemplated by the *Dorfman* rule. Rite Aid's *actual knowledge* that the PDPs on products supplied by third parties were misleading shows something more than passive sales, and overcomes the limitation imposed by the *Dorfman* rule.

The relevant facts underlying and supporting the above allegations are discussed below:

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

**1. Rite Aid actively reviews labels on third party suppliers' products it places in its stores for compliance with legal requirements pursuant to its "*Supplier Compliance Guide.*"**

Rite Aid publishes a "*Supplier Compliance Guide.*" In it, Rite Aid claims that:

"The Supplier Compliance Guide provides key information on how to conduct business with Rite Aid…."

Specifically, the *Supplier Compliance Guide* contains the following:

"New Item Compliance Testing (Label Review and Claims Validation): Testing and label validation is required to ensure federal requirements, label claims and product quality before the item is put on the shelf."

*\*\*\*\*\**

"Compliance Testing (State Regulations): \*\*\* ensuring that products comply with past settlements and are labeled with the appropriate warnings is imperative."

*\*\*\*\*\**

"Corrective Action is expected within 6 months of failure, depending on the severity of the issue."

*\*\*\*\*\**

PURCHASE ORDER TERMS & CONDITIONS
General

b) \*\*\* Supplier shall observe the requirements of any laws and regulations \*\*\*, including, without limitation, with respect to its \*\*\* labeling….

*\*\*\*\*\**

c) In the event that any Products covered by the Purchase Order are subject to the Federal Food, Drug and Cosmetic Act, \*\*\* and/or other applicable federal or state statutes, Supplier's invoice shall bear the separate guarantees provided under such federal or state statutes, and such invoice shall constitute a continuing guarantee in favor of Purchaser and its customers that the Products comply with such applicable federal or state statutes." (*Klingbeil dec*., para. 2).

Put simply, before Rite Aid places a third-party supplier's product on the shelves in its stores, it reviews the product to ensure that the label meets federal requirements, and that the

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

product meets or complies with the claims made on the label. Part of the review process is to ensure compliance with past settlements, which, presumably, would include the settlement reached in the *Silva* case.  Further, Rite Aid has an enforcement mechanism that provides suppliers an opportunity to correct any issues uncovered during Rite Aid's label review process.

The above shows that Rite Aid takes an active role in determining whether product labels are accurate and legal, and meet with Rite Aid's approval.  Rite Aid does more than passively place third parties' mislabeled products on its shelves – it engages in a review process which gives it the right to reject a label and even enforce corrective action.  Rite Aid's active role in the review, approval, and modification process supports direct liability for the sales of mislabeled dietary supplements it sells in its Oregon stores.

> **2.    Rite Aid has a "supplier portal" that directs third party product suppliers to its submission portal, "Range Me," which assists suppliers in preparing their products for submission to Rite Aid for inclusion in its stores.  A part of the service provided through the site is to review product labels for compliance with laws and regulations.**

Rite Aid's website provides instructions for third party suppliers who wish to submit products for inclusion in its stores. The relevant pages are found at:

https://raportal.riteaid.com/RA/RAPORTAL/RAMN0001.aspx?_ga=2.129139532.1327681310.1579030908-500158393.1579030908;  and https://app.rangeme.com/suppliers/jj-products-f13a0f/brands/640069/verification.

Part of the submission process includes a page that requires third party providers to upload product packaging and labeling for review. This also shows Rite Aid's active role in review and approval of labels for dietary supplements provided by third-party suppliers.  Under *Dorfman*, this further supports Rite Aid's direct liability for sales of Accused Products in its Oregon stores.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

**3.** **Rite Aid actively participates in disseminating the misleading information found on the PDPs of its third-party providers' Accused Products through its online presence / website pages.**

Rite Aid maintains an extensive website that lists each of the Accused Products. For each, Rite Aid provides a section entitled "product details" that provides a narrative relating the features of each of the Accused Products, including the information contained on the PDP. In addition, the URL for the Accused Products reiterate the misleading statements found on the PDPs for the Accused Products.

For example, the URL for the Accused Product "Nature's Bounty, Hair Skin & Nails" represents "6000 mcg, 80 ct," which misstates the contents of the product in the same manner as the misleading PDP. The URL for the product is:

> https://www.riteaid.com/shop/nature-s-bounty-optimal-solutions-advanced-hair-skin-nails-gummies-**6000mcg-80-ct** (Bold added).

Restating misleading label information on a Rite Aid's website also provides the "something more" required to establish liability under the *Dorfman* analysis.

**4.** **Rite Aid is directly liable under ORS 616.215, regardless of whether it only "passively" placed Accused Products provided by third parties on its shelves.**

Under Oregon law, it is unlawful to: "hold or offer[] for sale any food[4] that is \*\*\* misbranded" or to "recei[ve] in commerce any food that is \*\*\* misbranded, and the delivery or proffered delivery thereof for pay or otherwise." ORS 616.215(1) and (3).

The statute creates direct liability based on Rite Aid's "receiving in commerce" and offers to sell its third-party suppliers' misbranded dietary supplements. Nothing in the statute, or

---

[4] Under Oregon and federal law, dietary supplements are considered "food." See, ORS 616.205(10)(c) and 21 U.S.C. 321 (ff)(3)(b)(ii) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter.")

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

any case law qualifies or limits the application of this statute based on whether or not Rite Aid took an active or passive role in selling the misbranded Accused Products. Further, where Rite Aid had actual knowledge that the PDPs on products supplied by third parties were misleading, it should not matter whether it took an active or passive role relating to the misrepresentations.

> **5.**      **The *Dorfman* rule is satisfied where, as here, a retailer has actual knowledge that the labels placed on products provided by third parties are misleading.**

The *Dorfman* rule, by its very nature, is intended to protect the innocent retailer who simply trusts their third-party suppliers will provide products with labels that comply with the law. It is, essentially, a safe harbor provision that excuses a retailer from the obligation of carefully inspecting hundreds or thousands of products for compliance with the law.

The rule was not intended to provide a shield for a retailer who, as here, has *actual knowledge* that a product provided by a third-party supplier contains a misleading label or is misbranded, yet continues to offer the misbranded product for sale. Nor does it shield a retailer who has an extensive package and label review process for products provided by third parties.

Here, an allegation that Rite Aid had actual knowledge that the PDPs on products provided by its suppliers were misleading, yet continued to stock and sell them to consumers should be sufficient to satisfy the *Dorfman* rule. Actual knowledge that the products were misbranded is sufficient to provide the "something else" *Dorfman* requires.

> **C.**      **(Addressing Defendant's Brief, Section A.4., pages 19-22.)**
>
> **Plaintiff is not required to plead reliance under the Oregon UTPA under the facts of this case. Regardless, Plaintiff has alleged that he would not have purchased the product if he knew the PDP was misleading.**

Under the UTPA, reliance is not an element of the claim, but it may be used to establish causation. Whether reliance is required to establish causation depends on the nature of the

Page 12 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

unlawful trade practice and the nature of the ascertainable loss alleged. *Pearson v. Philip Morris, Inc.*, 358 Or. 88 (Or. 2014). Where the misrepresentation arises from an omission or failure to disclose information reliance is not required. *Scharfstein v. BP W. Coast Prods., LLC*, 292 Or. App. 69, 89 (Or. Ct. App. 2018) (Defendant failed to disclose to customers before their purchase of fuel that they would be charged a debit card processing fee, contrary to Oregon law.) Here, liability is created by Defendant's decision to omit verbiage necessary provide an accurate statement of quantity.

To illustrate why the misrepresentation here arises from an omission, one need only view the PDPs on dietary supplements sold by Rite Aid that include the omitted information.  As shown on Figure 2 in the *First Amended Complaint*, a truthful PDP includes text indicating that the stated 1000 mg is "Per 4 caplets" (or similar disclosure) as a qualifier to the stated quantity. Each of the Accused Products would pass legal muster if they simply included this or similar disclosure language.

Regardless of how the misrepresentations on the PDPs are styled – i.e., a direct misrepresentation or a misrepresentation by omission, in the end it does not matter.  In *Pearson*, Justice Walters' separate concurring opinion bears directly on this issue. There, Justice Walters wrote specifically to provide guidance to consumers and businesses (and future courts) regarding the interplay between reliance and diminished value claims under the UTPA.[5]

---

[5] Justice Walters wrote:

"I agree with the majority that, in this case, we need not determine whether subjective reliance is an element of a plaintiff's claim for diminished value and, if so, how that element may be proved. However, that issue may arise in the future, and a correct understanding of the law is important to those whose business or trade practices are

Page 13 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

Justice Walters points out two different purchaser scenarios.  The first is a consumer who purchased a cherry cola because she want to experience the cherry taste, but instead received a regular cola. Under that scenario, the consumer made a conscious decision to purchase the cherry cola based on the representation that it had a cherry flavor.  To prevail, the consumer must show that she relied on the representation that the cola had a cherry flavor when making her purchase. The consumer can seek a return of the price paid, even if the cost of cherry cola and regular cola are the same.

Justice Walters then explains:

> That does not mean, however, that a plaintiff who *can* show a difference between the price paid for a misrepresented product and the market value of that product must, like a plaintiff seeking a refund of the purchase price, also show that he or she made a subjective choice to purchase the product because of the misrepresented characteristic. In a diminished value claim, the plaintiff's ascertainable loss is not the full amount of the purchase price; rather, it is the difference between the purchase price and the market value of the item purchased. *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 143 (Or. 2014).

Justice Walters then provides an example -- directly relevant to this case -- involving the purchase of a tent:

> To illustrate the difference, consider the following example. Assume that a seller advertises a tent as having a dozen features, one of which is that the tent is waterproof and another of which is that the tent weighs less than three pounds. Assume that the plaintiff purchases the tent for $100 and that the subjective reason that she does so is that it is represented to be waterproof. The plaintiff plans to go camping that weekend, and rain is forecast. Although the plaintiff reads the description of the tent, including the description of the tent as weighing less than three pounds, weight is not the feature that motivates the plaintiff. She plans to go car camping, not to carry the tent on her back. Assume that, after making her purchase and completing her trip, the plaintiff decides to sell the tent and learns that it weighs six pounds, not the represented three. In addition, the

---

subject to the UTPA, as well as to those who purchase real estate, goods, or services that are subject to the act." *Pearson*, 358 Or. at 142.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

plaintiff learns that, all other features being equal, tents that weigh more than three pounds have a market value of no more than $80.

In that example, the seller engaged in an unlawful trade practice by representing that the tent had a characteristic that it did not have. ORS 646.608(1)(e). Also in that example, the plaintiff suffered an "ascertainable loss" as a "result of" the seller's unlawful trade practice, as required by ORS 646.638(1), because the plaintiff paid the market value of the tent as represented, but the tent was not as represented. The plaintiff's economic loss was the difference between the purchase price of the tent as represented ($100) and the objective market value of the tent that the plaintiff received ($80)—a difference of $20. Because the tent was not as represented, the plaintiff suffered economic loss when she paid more for the tent than it was objectively worth.

That conclusion is correct even though the plaintiff's subjective reason for purchasing the tent was that it was waterproof. **The UTPA does not require that a consumer's *purchase* be the "result of" an unlawful trade practice; it requires that a consumer's ascertainable *loss* be the "result of" an unlawful trade practice**. ORS 646.638(1). When a plaintiff can establish that she purchased an item and that, as a result of a misrepresentation of the item's characteristics, **the purchase price of that item was greater than its objective market value, the necessary connection between the unlawful trade practice and the ascertainable loss exists.** However, when a plaintiff cannot prove diminished market value and relies, instead, on a contention that she would not have purchased the item without a represented characteristic of particular benefit to her, the plaintiff must prove the subjective reason for her purchase.

\*\*\*\*\*

That understanding of the UTPA comports with its purpose. People buy products after weighing numerous characteristics, benefits, and qualities. They may make their final decisions based on more than one of a product's features, or they may not be able to articulate why, in the end, they laid their money down. But when people make purchases, they nevertheless expect to receive products that have all of the represented features, not only those features that were subjectively determinative in the purchasing decision. When a plaintiff establishes that he or she purchased a product that was not as represented and that he or she suffered diminished value as a result, the purchaser demonstrates ascertainable loss sufficient to permit a claim under the UTPA. *Id.,* 358 Or. at 143-44. (Bold added).

The facts of this case fall squarely within Justice Walter's example tent purchase.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

In addition to Justice Walter's reasoning, another basis for liability exists. Under Oregon and federal law, the PDP for each dietary supplement at issue was legally required to disclose the quantity of supplement within the container. ORS 616.250(1) (5); 21 CFR 101.105(a) and (c); see, also, 21 CFR 101.7. As stated in *Tri-West Const. v. Hernandez*, 43 Or. App. 961, 972 (Or. Ct. App. 1980) "proof that a party justifiably relied on a representation is not necessary when the representation involves a matter about which the party making it is legally required to inform the other." That facts of this case also fit squarely within the reasoning of *Tri-West.*

Here, Plaintiff has pled both that the accused dietary supplements are mislabeled and misbranded, and therefore illegal to sell and therefore have no value whatsoever (*First Amended Complaint,* paras. 55, 61), and alternatively that the misleading PDPs overstate the quantity – and therefore the value – of each Accused Product (*Id.,* paras. 43, 44, 66, 112).

Further, he has also pled that after discovering the misleading PDPs, he discontinued purchasing the dietary supplements (*Id.,* para. 124) and pled that that if he had discovered the misleading PDPs on the products before his purchases, he would not have purchased any of the accused dietary supplements. (*Id.,* para. 125).

Further, and consistent with the rationale of Justice Walter's discussion of diminished value as the form of ascertainable loss, and the holding in *Tri-West*, the transactions were a "prohibited transaction" under Oregon law. Under Oregon and federal law, a product with a misleading label is considered misbranded. ORS 616.250; 21 USC 343(d). It is *per se* unlawful to offer to sell or sell misbranded products in Oregon. ORS 616.215; 21 U.S.C. § 331(a)-(d) and (g). *See, also, United States v. Cole*, 84 F.Supp.3d 1159, 1169 ("Misbranded drugs may not be introduced into interstate commerce. 21 U.S.C. § 331(a).")

Page 16 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

The issue was addressed in *Bohr v. Tillamook Cnty. Creamery Ass'n,* 321 Or.App. 213 (Or.Ct.App. 2022). There, however, the connection between the misleading information and the purchase was too attenuated. As the *Bohr* court explained, class members there could have purchased the product having never seen the misleading statements. *Id.*, 321 Or.App. At 225.

Here, in contrast, the misleading and omitted information is on the PDP located on the front of the package for each dietary supplement. The PDP is described by both the FDA and Oregon administrative rules as "that part of a label that is most likely to be displayed, presented, shown or examined under normal and customary conditions of display for retail sale." ORS 616.205(18); see also, 21 CFR § 101.1. In short, a purchaser cannot identify the type of dietary supplement they are purchasing absent viewing the PDP.

The *Bohr* court's discussion of *Scharfstein* is illustrative. It noted that in *Scharfstein*, the "prohibited transaction" theory negated the need to plead reliance because there was an "obvious causal link between the unlawful trade practice, on the one hand, and the ascertainable loss, on the other." *Bohr* at 246. Here, the label identifying the type accused dietary supplement must necessarily be viewed by the consumer as a means to identify the type of product being selected. The misleading statement of quantity – which is misleading because it omits disclosing that the quantity stated on the PDP is for a two or more units of dietary supplement - is located directly adjacent to the identification of the product. The combination of information on the PDP – the identity and quantity of the product -- creates "an obvious causal link between the unlawful trade practice and the ascertainable loss" under a diminished value theory.

Plaintiff is not required to plead direct, subjective reliance on the misrepresentations in this case. Because the *omission* of required language forms the basis of the UTPA claims, and creates a prohibited transaction, subjective reliance is not required.

Page 17 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

Finally, even if this case is not found to be based on misrepresentation by omission, or omission of information the PDPs were legally required to accurately disclose, the UTPA does not require that a consumer's *purchase* be the "result of" an unlawful trade practice; it requires that a consumer's ascertainable *loss* be the "result of" an unlawful trade practice. ORS 646.638(1). As Justice Walters explained in *Pearson*, "when a plaintiff can establish that she purchased an item and that, as a result of a misrepresentation of the item's characteristics, the purchase price of that item was greater than its objective market value, the necessary connection between the unlawful trade practice and the ascertainable loss exists." *Pearson*, at 144.

Defendant's *Motion* should be denied.

### D. (Addressing Defendant's Brief, Section A.5., page 22.)

**Plaintiff / Class Representative has stated a claim for ascertainable loss.**

Here, Plaintiff / Class Representative Simon has pled that the misleading PDPs on the Accused Products he purchased (as well as the other similarly mislabeled Accused Products bought by class members) overstated the quantity, and therefore the value of the Accused Products.

The ascertainable loss is the difference between the value of the quantity of Accused Product as represented on the PDP, and the value of the actual quantity of Accused Product actually provided. Each package of the Accused Products contained one-half or less of the quantity of dietary supplement stated on the PDP. That is a sufficient basis to claim ascertainable loss.

In *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1134 (N.D. Cal. 2014) the court discussed ways to prove ascertainable loss. The *Ehret* court held that to obtain standing under the UCL (one of California's consumer protection laws), it is not necessary to allege and

Page 18 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

prove the plaintiff would not have entered the transaction but for the misrepresentation. Such but-for causation is only one of the "innumerable" ways of establishing standing identified *Kwisket v. Superior Court,* 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011). Economic injury sufficient to support standing exists where the plaintiff "surrender[ed] in a transaction more, or acquire[d] less than he or she otherwise would have." *Id.* That is precisely the case here.

Further, in *Walters v. Vitamin Shoppe Indust., Inc*., 701 F.App'x 667 (9th Cir. 2017) the court noted that the plaintiff stated that he would not have purchased the product but for the misleading PDPs. The *Walters* court held that the ascertainable loss was, therefore, the monetary value of a product that Walters would not otherwise have bought. *Walters*, *5. See, also, *Clark v. Eddie Bauer, LLC*, Case No. C20-1106-JCC. There, the court discussed the issue of ascertainable loss and referenced *Walters* to note that ascertainable loss was satisfied where the plaintiff received a "lower quantity of supplement than advertised".

Further, Plaintiff has pled that because each Accused Product was misbranded, under Oregon and federal law it cannot be legally manufactured, distributed, or sold in Oregon, and each is therefore worthless as a matter of law. (*First Amended Complaint*, paras. 55, 61).

Paying money for a legally prohibited and worthless product constitutes an ascertainable loss. In *Franz v. Beiersdorf, Inc.,* No. 17-55646 (9th Cir., 2018) the defendant sold a drug, Nivea CoQ10, without FDA approval, in violation of the federal Food, Drug, and Cosmetic Act (21 USC 331(d), 355(a)), and California's Sherman Law (Cal. Health & Safety Code Sec. 111550). Plaintiff alleged that as a result, she spent money on a product that should not have been on the market. The *Franz* court held that "those allegations are sufficient to establish standing under the UCL." (The UCL is California's Unfair Competition Law). That finding was based on a finding that the *Franz* plaintiff had suffered an injury in fact. *Franz*, No. 17-55646 at *3.

**Page 19 – PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

The *Franz* court held:

> Plaintiff likewise has standing under Article III of the United States Constitution. **Plaintiff alleged injury in fact**—she spent money on Nivea CoQ10. Defendant's allegedly illegal conduct caused that injury, insofar as Defendant allegedly **sold a product in commerce that it should not have sold**. *Franz*, No. 17-55646 at *4. (Bold added.)

Finally, while not an Oregon case but one brought under a similar consumer protection statute, the reasoning in *Basmadjian v. The RealReal, Inc.,* Case C 17-06910 WHA (N.D. Cal., 2018) regarding ascertainable loss applies with equal force here. In *Basmadjian,* the plaintiff in a putative class action case alleged that the defendant advertised diamond jewelry as having a certain carat weight, when the actual weight was significantly less. The plaintiff alleged that the price of jewelry is dependent, in part, on the weight of the gemstones.

The *Basmadjian* defendant moved to dismiss the case based in part on failure to plead ascertainable loss. Specifically, it claimed that plaintiff's allegations pertaining to the loss she suffered are speculative because she has not alleged that she paid more than the ring was actually worth. The *Basmadjian* court disagreed:

> Defendant's argument is based on the flawed premise that a consumer cannot suffer a loss unless they can prove that they paid more for a product than its objective value. Under this false premise, sellers would be free to misrepresent their products and mislead consumers into buying them so long as the price they charge is lower than the product's objective worth. This order disagrees with defendant's narrow construction of what constitutes an ascertainable loss.
>
> *****
>
> Because plaintiff has alleged she received less than what she bargained for, she has sufficiently pled an ascertainable loss. *Id.,* p. 7.

Here, Plaintiff and Class Members received less dietary supplement than was shown on the PDP of each Accused Product they purchased. Regardless of how the products were priced, they received less than what was represented, and therefore suffered an ascertainable loss.

Defendant's *Motion* should be denied.

Page 20 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

**E.** **(Addressing Defendant's Brief, Section A.5., page 22 and Section B.1, pages 25-29.)**

**Defendant errantly grounds its arguments for dismissal on its claim that that Plaintiff cannot represent a class based on purchases of Accused Products that he did not personally purchase.**

Defendant's *Motion* shows a fundamental misunderstanding of class action jurisprudence. Defendant repeatedly claims that this case can only proceed based on the four dietary supplements that Plaintiff actually purchased, and not the remaining Accused Products listed. (See, Def.'s *Motion*, pages 3, 4, 22, 25-28). Defendant claims that Plaintiff cannot serve as Class Representative with respect to the 194 Accused Products he did not purchase.

This is more properly a question to be resolved at class certification proceedings. *Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012). However, courts have held that the analysis can be proper at this stage with regard to standing. "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, at *12 (N.D. Cal. Mar. 14, 2014) citing *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (Beeler, J.); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012); and *Dorfman v. Nutramax Laboratories, Inc.*, No. 13cv0873 WQH (RBB) (S.D. Cal. Sep. 23, 2013).

When evaluating whether a plaintiff has standing to sue on behalf of others who have suffered similar, but not identical injuries, the Ninth Circuit has held that in "determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely and consider instead the context of the inquiry." *Armstrong v. Davis,* 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California,* 543 U.S. 499, 504-05 (2005).

Regardless, with regard to standing the question is whether a Plaintiff / Class Representative suffered economic injury based on purchases **he made**, and not for the other transactions **he seeks to represent**. *Trazo v. Nestle USA, Inc.,* No. 12-cv-2272 PSG, 2013 WL 4083218, at *4 (N.D. Cal. Aug. 9, 2013)(bold added); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.,* No. 11-cv-2910-EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012).

The determinative question, then, is whether the Accused Products purchased by Plaintiff are "substantially similar" to the balance of the Accused Products with regard to the type or nature of product, and more importantly in the type, nature, and degree of the harm the misrepresentations caused to the class members.

First, each of the Accused Products contains dietary supplements provided in individualized units that require two or more units per "serving." These may be described as gummies, tablets, pills, soft-gels or some other individualized and described "Unit." In contrast, Plaintiff has not included mislabeled products that are in liquid or powder form -- which would likely not be substantially similar -- but only those that are in a substantially similar delivery system of individualized Units. It matters not that one package may contain Units of Vitamin C, another Vitamin D, and another Magnesium.

Second, the misrepresentations related to each of the Accused Products break into two groups, and the products within each group contain identical misrepresentations. The first group are dietary supplements with a PDP that: (1) lists the number of Units in the container, and (2)

Page 22 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

states a quantity of dietary supplement -- ostensibly for each Unit -- but actually for a "serving size" of two or more.

The second category consists of identical misrepresentations as the first group but adds the statement "per serving"[6] to the PDP. Both groups of PDPs fail to contain "an accurate statement of the net quantity of contents" as required under Oregon and federal law. Both groups of PDPs mislead consumers in the same way – by representing the package contains twice (or more)[7] of the amount of dietary supplement actually contained in the package. Plaintiff has segregated the Accused Products into these two groups only to avoid confusion if Defendant later asserts that the "per serving" label somehow causes the misleading PDPs to comply with Oregon and federal law.

The reasoning and cases cited in *Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO (N.D. Cal. Mar. 26, 2014) are relevant here. In *Bohac*, the plaintiff sought to represent purchasers of 29 different flavors and varieties of granola bars. The misrepresentation was that each label claimed the product was either "100% Natural" or "all natural." The defendant argued that the products were not "substantially similar" because ingredients and labeling vary across the 29 products. The *Bohac* court disagreed:

---

[6] Both are mislabeled under Oregon and federal law. ORS 616.250(1), (5), and (6) require that the PDP contain "an accurate statement of the net quantity of contents." 21 CFR 101.105(a) and (c) require that the PDP "shall bear a declaration of the net quantity of contents" and 21 CFR 101.7 requires that "the declaration shall appear as a distinct item on the principal display panel" and "shall accurately reveal the quantity" of dietary supplement in the package. Regardless of whether the PDP contains "per serving" or not, both formats fail to "contain an accurate statement of the net quantity of contents" in the container.

[7] Most of the Accused Products have a serving size of two, which means the PDP overstates the amount of dietary supplement in the container by a factor of two, while others have serving sizes of 3 or more, which overstates the amount of dietary supplement in the package by a factor of 3 or more.

Page 23 – **PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

> I am persuaded that Bohac has standing to bring claims challenging the 29 products for having the label "100% NATURAL" and "all natural." He claims that all of the products contain essentially the same representations. The harm that he alleges, i.e., that he was misled by that purportedly fraudulent and incorrect representation, is the same for all 29 products. While product composition and appearance can be relevant for determining whether products are substantially similar, Bohac alleges that all of the challenged products are different flavors and varieties of granola bars and make the same "100% Natural" and "all natural" claims. Though General Mills argues that the products are not "substantially similar" because ingredients and labeling vary across the 29 products, these differences do not change the fact that, as alleged, **the challenged representations are the same and cause the same harm**. General Mills does not argue that the differences affect the nature of or harm from the alleged misrepresentation, so any such differences are insufficient to defeat substantial similarity for purposes of standing. *Bohac* at 19. (Bold added.)

The same analysis is determinative here. While the "ingredients" of the dietary supplements may vary – i.e., Vitamin C gummies, Vitamin D soft-gels, or Magnesium tablets – the misrepresentations on the PDPs are the same and cause the same type of harm in the same way. Variations in the type of dietary supplement, or the nature of the individual Unit of supplement have little if anything to do with the type, method, or degree of the harm caused. Rite Aid has not argued, nor can it show that the differences it cites affect the type or degree of harm from the alleged misrepresentations on the PDPs.

See, also, *Morgan v. Wallaby Yogurt Co., Inc.,* No. 13-cv-00296-WHO (N.D. Cal. Mar. 13, 2014)(17 different types of misbranded yogurt, but with the same misrepresentation of "evaporated cane juice" instead of "added sugar"); *Astiana v. Dreyer's Grand Ice Cream,* 2012 WL 2990766, at *13 ("Plaintiffs are challenging the same kind of food products (i.e., ice cream) as well as the same labels for all of the products—*i.e.,* 'All Natural Flavors' for the Dreyer's/Edy's products and 'All Natural Ice Cream' for the Haagen-Dazs products. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors."); *Ang v. Bimbo Bakeries USA, Inc.,* No. 13-cv-1196, slip op. at 14 (N.D. Cal. March 13, 2014) ("I considered the various

**Page 24 – PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

approaches that judges in this district have taken in applying the substantial similarity test. I concluded that whether products are substantially similar depends on whether the type of claim and consumer injury between products the plaintiff did and did not purchase is substantially similar.")

Defendant relies on *Holt v. FoodState, Inc.,* 2015 WL 9592534, at 2-3 to argue that because the 109 various supplements named by the purchasers of two multivitamins were found to not be substantially similar, this court should find the same. Defendant's argument fails because it ignores the glaring difference between the allegations of this case and the claims in *Holt*.

The *Holt* plaintiff claimed that the defendant falsely represented that its products were from "whole food sources," when they were actually from synthetic sources. Those claims require an analysis and comparison of the ingredient lists for each of the 109 products, most of which had a wide variety of ingredients. Undoubtedly, when the claim relies on the composition of the product and its particular ingredients, it is highly unlikely that 109 different products would be substantially similar.

In contrast, the claims in this case have little if any connection to the specific type of ingredients contained within each of the dietary supplements. The misrepresentation in this case as well as the analysis of similarity is not about comparing the makeup or ingredients of the accused dietary supplements, but instead about the quantity of the supplement claimed to be contained within the package. *Holt* is easily distinguishable and has little bearing on this case.

Here, the products are of the same class (i.e., dietary supplements), are consumed in the same manner (i.e., individualized units from a package or container), and the misrepresentations on the PDPs placed on the containers all mislead in the same way (i.e., overstating the quantity

**Page 25 – PLF'S RESPONSE TO DEF'S FRCP 12(b)(6) MOTION TO DISMISS PLF'S FIRST AMENDED COMPLAINT**

of dietary supplement in the container). All of the Accused Products are substantially similar in that the challenged representations are the same and caused the same harm. Defendant's *Motion* should be denied.

F.     **(Addressing Defendant's Brief, Section A.6., page 22-24).**

       **Plaintiff has properly stated a claim for intentional misrepresentation.**

Defendant's argument against Plaintiff's false representation claim errs in numerous ways.  First, it ignores the guidance from *Walters* and *Williams* cases, and instead insists that the "take back" language on the Supplement Facts panels erases misrepresentations that exist in the PDPs. As discussed above, it does not.

It also again styles itself as merely an innocent retailer, and as discussed above, again ignores the role it played relating to the label and product review process, its posting and reiteration of the misleading PDP information, and the pricing labels that reflect the same misleading information.

Finally, at pages 23 and 24 of its brief Defendant seems to require that Plaintiff list each potential class member who purchased Accused Product and include all the details of each purpose. That is not how class actions work, even for fraud claims.

Defendant's *Motion* should be denied.

G.     **(Addressing Defendant's Brief, Section B.2., pages 29 and 30.)**

       **Reference to the *Silva* case is appropriate to show that Defendant had actual knowledge that the labels on the Accused Products were misleading.**

Defendant's knowledge or recognition of the falsity is an element of a claim under the Oregon UTPA and intentional misrepresentation. Further, such knowledge can be important when seeking statutory damages on a class-wide basis under the UTPA. See, ORS 646.638(8)(a)

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

(damages must be the result of a reckless or knowing use or employment by the defendant of a practice declared unlawful by ORS 646.608).

Here, reference to the *Silva* case is included in the *First Amended Complaint* to show Defendant's knowledge that the labels on the Accused Products were an issue, and that it was either on notice, or inquiry notice of that fact. It is not offered to show any admissions of culpability or proof that the labels violate Oregon or federal law.

If, however, the fact that the settlement occurred is not properly allowed in the *First Amended Complaint* for that purpose, then Plaintiff seeks leave to remove references to the settlement but retain allegations that Rite Aid was sued by Silva in the past, and therefore was on notice, or at least inquiry notice that there were issues with the dietary supplement labels.

## III. Conclusion

Defendant's *Motions* should be denied for the reasons set forth above. If this Court finds that any portion of the *Motion* should be granted, Plaintiff seeks leave to amend his *First Amended Complaint* to address any shortcomings.

Dated: September 1, 2023.

/s/ Rick Klingbeil

_____
Rick Klingbeil
OSB #933326

**CERTIFICATE OF SERVICE**

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

I hereby certify that on September 1, 2023, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system, which will send notice of said filing to

counsel of record as follows:

Sarah P. Pozzi,
E-mail: spozzi@cozen.com
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: (206) 340-1000


Paul K. Leary, Jr. (*pro hac vice*)
E-mail: pleary@cozen.com

Benjamin I. Wilkoff (*pro hac vice pending*)
E-mail: bwilkoff@cozen.com

One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-6911


Rachel B. Soloman (*pro hac vice pending*)
E-mail: rsoloman@cozen.com
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007 Telephone: (212) 908-1378

*Attorneys for Defendant Rite Aid Corporation*

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com